# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfredo Garcia, | No. CV-16-04569-PHX-DJH (JFM) |
| Plaintiff, | **ORDER** |
| v. | |
| Corizon Health Services, et al., | |
| Defendants. | |

Plaintiff Alfredo Garcia, who is confined in the Arizona State Prison Complex-Lewis in Buckeye, Arizona, brought this pro se civil rights action under 42 U.S.C. § 1983 against Corizon Health Services. (Doc. 14.) Before the Court is Corizon's Motion for Summary Judgment and Motion to Strike Garcia's Sur-Reply. (Docs. 42, 54.)

The Court will deny the Motion to Strike, grant the Motion for Summary Judgment, and terminate the action.

**I.   Background**

In his Complaint, Garcia alleges that Corizon has denied him adequate dental and medical care in violation of the Eighth Amendment. (Doc. 14 at 5.) Garcia asserts that he has lost one bottom molar, one upper molar, and his two upper front teeth. (*Id.*) He alleges that, in accordance with its policy, Corizon has denied him a partial denture and that the lack of a partial denture has caused him to suffer unnecessary pain, gum soreness, abrasions, bleeding, and discomfort when eating. (*Id.*) Garcia sues for injunctive relief and costs. (*Id.*)

Corizon moves for summary judgment on the grounds that (1) Garcia's need for a partial denture prosthesis does not constitute a serious medical condition, and (2) the failure to provide a partial denture did not cause Garcia further significant injury or unnecessary pain. (Doc. 42.)[1]

The parties briefed the Motion for Summary Judgment, and then Garcia filed a Sur-Reply, which Corizon moves to strike. (Doc. 54.)

**II.   Motion to Strike**

Garcia's Sur-Reply addresses the parties' argument over which portion of Arizona's Indigent Health Care System dental policy most accurately sets forth the community standard of care. (*See* Docs. 52-53.) This is not material to Garcia's claim against Corizon. To support a medical malpractice or negligence claim, a plaintiff must present evidence to establish the general standard of care and that the defendant deviated from that standard. *See* Ariz. Rev. Stat. § 12-563. But a plaintiff does not have to establish the general standard of care to support an Eighth Amendment deliberate indifference claim. *See Johnson v. Beard*, No. 2:15-cv-1313 TLN KJN P, 2018 WL 1392896, at *16 (E.D. Cal. March 20, 20118) ("providing medical care that falls below the standard of care is negligence, not deliberate indifference"). Garcia alleges a deliberate indifference claim; he does not assert a negligence claim. (Doc. 14 at 5.) Accordingly, the community standard of care is not relevant. The Sur-Reply will not be considered, and Corizon's Motion to Strike will be denied as unnecessary.

**III.   Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion

---

[1] The Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998), which informed Garcia of the summary judgment requirements under Federal Rule of Civil Procedure 56. (Doc. 44.)

1 and identifying those portions of the record, together with affidavits, if any, that it
2 believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at
3 323.

4     If the movant fails to carry its initial burden of production, the nonmovant need
5 not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d
6 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the
7 burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and
8 that the fact in contention is material, i.e., a fact that might affect the outcome of the suit
9 under the governing law, and that the dispute is genuine, i.e., the evidence is such that a
10 reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby,*
11 *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d
12 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact
13 conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–
14 89 (1968); however, it must "come forward with specific facts showing that there is a
15 genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475
16 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

17     At summary judgment, the judge's function is not to weigh the evidence and
18 determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,
19 477 U.S. at 249. In its analysis, the court does not make credibility determinations; it
20 must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.
21 *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The
22 court need consider only the cited materials, but it may consider any other materials in
23 the record. Fed. R. Civ. P. 56(c)(3). Where the nonmovant is a pro se litigant, the court
24 must consider as evidence in opposition to summary judgment all of the nonmovant's
25 contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918,
26 923 (9th Cir. 2004).

27 **IV. Relevant Facts**

28     In 2005, Garcia entered ADC custody without his two upper front teeth, which

were knocked out when he was struck in the face with a rubber bullet while taken into police custody. (Doc. 49, Pl. Decl. ¶¶ 4–5 (Doc. 49 at 18); Doc. 49, Pl.'s Statement of Facts ¶ 21.) Upon losing his teeth, Garcia began suffering from gum soreness, abrasions, and discomfort with masticating food as well as attendant psychological issues, including depression. (*Id.*, Pl. Decl. ¶ 4.) Since 2005, Garcia has repeatedly requested upper partial dentures to relieve his symptoms. (*Id.* ¶¶ 5–6.) All his requests were denied on the ground that he did not meet the criteria set forth in the ADC dental policy. (*Id.* ¶ 6.)

Under ADC dental policy 771.5,

> Partial denture prosthesis shall only be provided if the Occlusion Score is 15 or less and the patient does not have active caries, moderate or severe periodontal disease, mobility of abutments or inadequate oral hygiene, as evidence by the presence of plaque, materia alba, stain, tartar, red bleeding gingiva.

(Doc. 43-2 at 8.) Partial dentures are considered in accordance with the following: the first priority is given to medically compromised patients who exhibit a significant medical condition that may be ameliorated by partial dentures; second priority is to those who qualify as a result of extraction performed as part of treatment or who lost teeth while in ADC; and third priority is to those who entered ADC with missing teeth. (*Id.* at 9.) An exception to the required Occlusion Score can be granted by the Dental Program Manager if there is a significant psychological need that is documented by the staff psychiatrist and psychologist and sent to the Manager. (*Id.* at 9.)

On January 12, 2015, Garcia submitted a Health Needs Request (HNR) requesting an appointment with the dentist and dental partials. (Doc. 43, Def.'s Statement of Facts ¶ 7.) The undated response stated that Garcia is "on the calendar list." (Doc. 43-1 at 36.)

A month later, on February 11, 2015, Garcia submitted a second HNR with the same request. (*Id.* at 36.) The undated response stated that Garcia is "on the calendar list." (*Id.*)

On March 11, 2015, Garcia submitted a third HNR stating that he is again requesting an appointment so that he may receive dental partials. (*Id.* at 37.) He wrote

that he has been waiting almost 2 months since his initial request but has not been seen. (*Id.*) The HNR response stated that Garcia is still pending on the calendar list. (*Id.*)

On April 22, 2015, Garcia was seen by dentist Dr. Favela. (Doc. 43 ¶ 13(a).) Favela performed a limited exam and noted that Garcia's two upper front teeth were missing. (Doc. 43-1 at 3.) Garcia told Favela that the missing teeth have caused him to suffer and he continues to suffer from gum soreness, abrasions, and discomfort with masticating as well as psychological issues. (Doc. 49, Pl. Decl. ¶¶ 4, 7.) Favela documented that the April 22, 2015 appointment was an "eval only" and that Garcia "does not qualify for upper partial due to DOC rules and regulation." (Doc. 42-1 at 3.) Favela wrote that Garcia "needs to meet the criteria for movable pros[etheses]. He is not missing enough teeth at this time for an upper partial[.]" (*Id.* at 4.)

The April 22, 2015 dental record indicates that at the time, Garcia was taking Carbamazepine and Venlafaxine, which were prescribed to treat bi-polar disorder and depression. (Doc 43-1 at 4; Doc. 49 ¶ 26.) Garcia had complained to mental health staff about the ongoing negative effects that his missing front teeth have inflicted on him, and mental health staff told him to take up the issue with the dental staff. (Doc 49 ¶ 28.)

On August 22, 2016, Garcia had a dental cleaning and he saw Favela for a limited exam. (Doc. 43-1 at 6, 10–11.) Garcia complained of gum soreness, bleeding, and discomfort while eating. (Doc. 49 ¶ 14.) Favela documented gingival inflammation; that Garcia's teeth were hard-scaled to remove plaque, calculus, and stains; and that Garcia tolerated the treatment well. (Doc 43-1 at 12.)

To date, Garcia has not received a partial upper denture.

**V.  Standard Governing Claim against Corizon**

To support a § 1983 claim against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012) (extending the "official policy" requirement for

1  municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), to private entities acting under color of law). Under *Monell*, a plaintiff must show that (1) he suffered a constitutional injury; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional injury. *See Monell*, 436 U.S. at 691–94; *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

**VI.  Discussion**

    **A.  Constitutional Violation**

        **1.  Legal Standard**

"Dental care is one of the most important medical needs of inmates." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). Therefore, the Eighth Amendment requires that prisoners have access to adequate dental care. *Id.* To state a claim under the Eighth Amendment for a violation involving dental/medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt*, 865 F.2d at 200).

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

### 2. Analysis

#### i. Serious Medical Need

Corizon argues that Garcia does not suffer from a serious medical condition because he presents no evidence that he has incurred "irreparable damage to his teeth" without partial dentures. (Doc. 42 at 9–10.)

Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059–60. The Ninth Circuit has held that a prisoner who alleges bleeding gums, severe pain, and difficulty eating may have a serious medical need for dentures. *Hunt*, 865 F.2d at 200; *see Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (per curiam) (concluding that a prisoner's allegations of an inability to chew, bleeding, headaches, and disfigurement are sufficient to demonstrate a serious medical need for dentures). Here, Garcia avers that without his front teeth he suffers from gum soreness, abrasions, bleeding, unnecessary pain, and discomfort when chewing, which affects his ability to masticate food properly. (Doc. 14 at 5; Doc. 49, Pl. Decl. ¶¶ 4, 7.)[2] He further

---

[2] Corizon argues that Garcia's Controverting Statement of Facts is procedurally improper and unsupported and that Garcia's declaration violates the Federal and Local

- 7 -

alleges that he suffers attendant psychological issues because of his missing teeth. (Doc. 49, Pl. Decl. ¶¶ 7, 9.) Taking Garcia's sworn statements as true, which is required at summary judgment, a reasonable jury could find that Garcia's condition constitutes a serious medical need.

### ii. Deliberate Indifference

The Court therefore turns to the subjective prong of the analysis, and whether the response to Garcia's serious medical need exhibited deliberate indifference.

First, the Court addresses Corizon's claim that it was not aware of any excessive risk to Garcia's health because Garcia never complained of pain, gum soreness, abrasions, bleeding gums or an inability to eat in any of his HNRs and Garcia has not requested a dental appointment since his last visit in August 2016. (Doc. 42 at 12.) In his declaration Garcia avers that he has been requesting partial upper dentures since his arrival at ADC, and that at every dentist appointment he has complained of pain, gum soreness, abrasions, discomfort when masticating food, and psychological issues related to his missing teeth. (Doc. 49, Pl. Decl. ¶¶ 4–6.) Garcia specifically avers that he personally told Favela about his symptoms and suffering. (*Id.* ¶ 7.) In his supplemental declaration, Favela states that he has no recollection of Garcia verbalizing any symptoms related to his missing teeth. (Doc. 52, Ex. A, Favela Supp. Decl. ¶¶ 5–7.) But failure to remember factual information, like having a "belief" in factual information, is insufficient because it does not show personal knowledge. *See* Fed. R. Civ. P. 56(c)(4)

---

Rules of Civil Procedure because it is "filled with self-serving and conclusory statements with no evidentiary support." (Doc. 52 at 2.) Corizon asserts generally that Garcia fails to provide evidence to support his disputes. But Corizon does not set forth any specific objection to an identified paragraph within Garcia's Statement of Facts or declaration. Further, Corizon's claim that Garcia's disputes and asserted facts are unsupported is incorrect. Garcia properly shows where materials in the record do not support Corizon's specific asserted facts. (*See* Doc. 43 ¶ 13.) *See* Fed. R. Civ. P. 56(c)(1)(B). And Garcia's declaration is sworn under penalty of perjury and sets out facts that would be admissible in evidence, and he has personal knowledge to attest to his own symptoms and suffering. *See* Fed. R. Civ. P. 56(c)(4); *S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (declarant has personal knowledge of her own symptoms). Accordingly, Garcia's Statement of Facts and declaration sufficiently set out disputes with Corizon's asserted facts and comply with the Federal Rules of Civil Procedure.

(sworn statement used to support summary judgment motion must be made on personal knowledge); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412–13 (9th Cir. 1995) (declaration on information and belief is entitled to no weight where declarant lacks personal knowledge). Regardless, the Court must take as true Garcia's claim that he reported pain, bleeding, gum soreness, and discomfort when masticating food as well as psychological issues related to his missing teeth such that Corizon staff, including Favela, were aware of Garcia's symptoms.

In addition, Garcia put Corizon on notice of his need for partial upper dentures through the administrative grievance process. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (the prisoner put officials on notice by filing grievances alerting them that the showers posed a risk to his safety); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (primary purpose of a grievance is to alert officials to a problem for which redress is sought). Garcia alleged that he submitted a request for administrative relief related to his claim that he has been denied partial dentures despite unnecessary pain and suffering, and he alleged that he appealed his request for relief to the highest level. (Doc. 14 at 5.) Corizon has not disputed that Garcia filed a grievance and exhausted administrative remedies for his claim. According to the ADC grievance policy, grievances related to medical issues are forwarded to the Contract Facility Health Administrator for a response, and the Contract Facility Health Administrator is a Corizon official.[3]

Garcia's failure to file HNRs detailing his symptoms or requesting more appointments does not defeat his claim. The record shows that Garcia filed HNRs requesting appointments with the dentist so that he could get partial dentures. (Doc. 43-1 at 36–37.) Garcia saw Favela, and Garcia personally informed Favela of his symptoms and suffering. (Doc. 49, Pl. Decl. ¶ 7.) But Favela denied the request for partial upper

---

[3] *See Inmate Grievance Procedure*, ADC Department Order 802 § 5.0, https://corrections.az.gov/sites/default/files/policies/800/0802_010119.pdf (last visited Jan. 14, 2019).

dentures.  (Doc. 43-1 at 3–4.)  Thereafter, Garcia filed a grievance about this denial and appealed it to the highest level, where it was denied.  (Doc. 14 at 5.)  It is not reasonable to require Garcia to continue filing HNRs with the same request after receiving affirmative denials from the dentist and other Corizon officials.

Next, Corizon contends that denying Garcia's partial upper dentures did not constitute deliberate indifference because Garcia does not meet the criteria for a partial prosthesis under the relevant ADC policy.  (Doc. 42 at 10.)  The April 22, 2015 dental record documents only one basis for denying Garcia partial dentures in accordance with the ADC rules and regulations; "he is not missing enough teeth at this time[.]"  (Doc. 43-1 at 4.)  But there is no provision within the proffered ADC Dental Services Technical Manual that requires a certain number of teeth to be missing for a patient to be eligible for partial dentures.  (*See id.* at 34–35.)

In his declaration, Favela provides a different basis for denying the partial dentures; he avers that the reason Garcia did not meet the criteria for partial dentures was because his Occlusion Score was not 15 or less as required under the ADC dental policy.  (Doc. 43, Ex. B, Favela Decl. ¶ 10(a) & (c); Doc. 43-2 at 8.)  Favela avers that Garcia's Occlusion Score was 18.  (Doc. 43, Ex. B, Favela Decl. ¶ 10(c).)  Favela's declaration, signed in May 2018, does not cite to a particular part of the record showing Garcia's Occlusion Score; thus, it does not comply with Rule 56.  *See* Fed. R. Civ. P. 56(c)(1)(A) (to support an asserted fact a party must cite to a particular part of the record).  And, as Garcia points out, there is no documentation in his dental records that his Occlusion Score was 18.  (Doc. 49 ¶ 13.)  In response to notice of this evidentiary deficiency, Corizon baldly asserts that because Favela is a dentist, he has the education and training to opine as to Garcia's Occlusion Score based on his review of the dental records and his own involvement in treating Garcia.  (Doc. 52 at 9.)  The ADC Dental Services Technical Manual defines Occlusion Score as the total of occlusion points measured between the incisors, canines, bicuspids, molars, and wisdom teeth.  (Doc. 43-2 at 8.)  Thus, the Occlusion Score is a specific, calculated measurement; not a judgment or an opinion.

Further, Favela explains that the dental clinical records are thorough and contain a patient's "diagnoses, conditions, observations, examinations, opinions, acts, and events." (Doc. 43, Ex. B, Favela Decl. ¶ 5.) It follows that the dental records would include a patient's Occlusion Score; yet, there is no record of Garcia's Occlusion Score—either the total or individual occlusion points—anywhere in his dental records. (*See* Doc. 43, Ex. A (Doc. 43-1 at 2–13).) Favela cannot show that he has personal knowledge to testify in 2018 as to what Garcia's specific Occlusion Score was in 2015 absent any contemporaneously made record. Consequently, there is no competent evidence to support Corizon's claim that Garcia had an Occlusion Score of 18.

In short, there was nothing in the ADC dental policy that precluded Garcia from qualifying for partial dentures based on the number of teeth he was missing, nor is there any evidence that his Occlusion Score rendered him ineligible for partial dentures. As mentioned above, partial dentures are provided "if the Occlusion Score is 15 or less *and* the patient does not have active caries, moderate or severe periodontal disease, mobility of abutments or inadequate oral hygiene." (Doc. 43-1 at 34 (emphasis added).)[4] There is no documentation in the April 22, 2015 dental record showing that Garcia had any of these conditions that would have disqualified him from receiving partial dentures. (*See* Doc. 43-1 at 2–5.) On this record, Corizon fails to show that, in 2015, Garcia did not meet the criteria under the ADC dental policy for partial upper dentures.

Garcia's August 22, 2016 dental record does not include any Occlusion Score, but it does document that Favela assessed gingivitis, a form of periodontal disease. (Doc. 43-1 at 6–13.)[5] There is no indication, however, that this gingivitis was "moderate or

---

[4] Active caries are "microbially induced lesions of the teeth that are increasing in size. Stedmans Medical Dictionary 145550. An abutment is a tooth or implanted tooth substitute that is used to support or anchor a fixed or removable prosthesis. *Id.* 3420.

[5] Gingivitis is defined as "a common and mild form of gum disease (periodontal disease) that causes irritation, redness and swelling (inflammation) of your gingiva, the part of your gum around the base of your teeth." *See Gingivitis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/gingivitis/symptoms-causes/syc-20354453 (last visited Jan. 14, 2019).

severe" such that it would disqualify Garcia from receiving upper partial dentures under the ADC dental policy. (*See id.* at 12, 34.)  More importantly, Favela did not indicate that the periodontal disease was the reason for denying Garcia partial dentures.  Instead, Favela again avers, without support in the record, that the reason Garcia did not and does not meet the criteria for upper partial dentures under the ADC policy is because Garcia's Occlusion Score is higher than 15.  (Doc. 43, Ex. B, Favela Decl. ¶ 12(c).)  Absent any competent evidence that Garcia's Occlusion Score was or is higher than 15, or that he would otherwise be ineligible for upper partial dentures, Corizon fails to show that, either in 2016 or currently, Garcia does not meet the criteria under the ADC dental policy for partial upper dentures.

Corizon argues that apart from whether Garcia qualifies for partial dentures under the ADC dental policy, the partial dentures were not medically necessary.  (Doc. 42 at 10–11.)  Corizon maintains that without evidence showing that Plaintiff has incurred "irreparable damage" to his mouth or teeth, he cannot show that partial dentures are medical necessary.  (*Id.*)  This is the same argument Corizon raised with respect to a serious medical need.  If a jury believes that Garcia suffers discomfort while masticating, gum soreness, pain and bleeding sufficient to constitute a serious medical need, it could also find that, if partial dentures would alleviate such suffering, refusal to provide the dentures amounts to deliberate indifference.

### iii. Harm Caused by the Indifference

The final question in the analysis is whether Garcia suffered harm as a result of being denied upper partial dentures.  Corizon asserts generally that Garcia has not been harmed by his lack of a dental prosthesis because partial dentures are not medically necessary.  (Doc. 52 at 10.)  But continued gum soreness, pain, abrasions and bleeding suffered as a result of not having partial dentures could be found to constitute harm sufficient to support an Eighth Amendment claim.

### B. Policy Amounting to Deliberate Indifference that Caused Violation

As discussed above, whether there is a constitutional violation—in this case,

deliberate indifference to a serious medical need—is the first of four elements to be considered when determining whether an entity is liable under § 1983. Because there is a material factual dispute on that first element, the Court must consider whether Corizon had a policy or custom and, if so, whether that policy or custom amounted to deliberate indifference and was the moving force behind the constitutional violation. *Mabe*, 237 F.3d at 1110–11; *see Tsao*, 698 F.3d at 1139 (private entity liable under § 1983 only if constitutional violation caused by a policy).

With respect to the second element, there is no dispute that Corizon has a dental policy that governs the provision of partial dentures. (*See* Doc. 43-1 at 30–35.)

As to the third and fourth elements, Corizon argues that the dental policy does not amount to deliberate indifference because there is no evidence that it is inappropriate, inadequate, or otherwise deficient such that it harmed Garcia. (Doc. 42 at 12.) Garcia counters that the mechanical application of the dental policy constitutes deliberate indifference to his serious medical need. (Doc. 51 at 20.) Garcia argues that the policy's requirements and disqualifiers are the moving force of the constitutional violation in this case because the restrictive criteria prevents him from obtaining necessary medical care. (*Id.* at 13–14.)

A medical policy that prioritizes treatment based on certain criteria could be unconstitutional if the criteria includes non-medical considerations. *See, e.g., Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *14 (M.D. Penn. Jan. 3, 2017) (finding reasonable likelihood of success on deliberate indifference prong where defendant prison followed a policy that prioritized hepatitis C antiviral treatment based on non-medical reasons). In this case, the dental policy limits partial dentures to those with a certain Occlusion Score along with the absence of other dental conditions. (Doc. 43-1 at 34.) The Occlusion Score is used to measure adequate masticatory function and is therefore a medical consideration, as is evaluation of other existing dental conditions. The fact that the ADC dental policy differs from other dental policies does not render it per se unconstitutional. Thus, contrary to Garcia's contention, the ADC dental policy is not

unconstitutional on its face. (*See* Doc. 51 at 12–14.)

To support his claim that the dental policy's restrictive criteria violated his constitutional rights because it prohibits dentists from exercising independent medical judgment, Garcia must show that his injury would have been avoided had a different policy been implemented. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1190 (9th Cir. 2006). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." *Id.* (internal quotation omitted). Favela initially documented that Garcia was not eligible for partial dentures because he was not missing enough teeth; however, there is nothing in the dental policy requiring that a certain number of teeth must be missing before eligibility. This denial was therefore not pursuant to any criteria in the dental policy. Favela now asserts that Garcia was not eligible for partial dentures because his Occlusion Score was not 15-or-less. But there is no evidence that Garcia's Occlusion Score was ever measured or documented. As such, this basis for denying partial dentures is also not pursuant to any criteria in the dental policy.

It appears that Favela used the dental policy as a pretext for denying Garcia partial dentures, but, in failing to ascertain Garcia's Occlusion Score, he did not follow the policy to determine whether Garcia qualified for partial dentures. Garcia also alleges that Favela failed to follow the dental policy's provisions that require specific charting of symptoms, assessments, and patient care notes. (Doc. 51 at 6, 18, 21–23.) And Garcia claims that Favela did not follow the dental policy's provision that allows an exception to the Occlusion Score requirement where there is a significant psychological need. (*Id.* at 24.)

In short, it was a failure to follow the dental policy, rather than the policy itself, that caused the alleged constitutional violation. Indeed, Garcia may currently be eligible for upper partial dentures under the dental policy as applied properly. If Garcia continues to suffer because of an unwarranted denial of partial dentures, this may constitute an ongoing violation sufficient to support an individual-capacity claim against the dentist.

But Corizon cannot be liable as an entity for an unconstitutional dental policy in this instance. The Motion for Summary Judgment will therefore be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant Corizon's Motion for Summary Judgment (Doc. 42) and Motion to Strike (Doc. 54).

(2) Defendant Corizon's Motion to Strike (Doc. 54) is **denied**.

(3) Defendant Corizon's Motion for Summary Judgment (Doc. 42) is **granted**.

(4) The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 25th day of January, 2019.

Honorable Diane J. Humetewa
United States District Judge